**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joe Clarence Smith, Jr., | No. CV-12-00318-PHX-ROS |
| Petitioner, | **ORDER** |
| v. | <u>DEATH PENALTY CASE</u> |
| Ryan Thornell, et al., | |
| Respondents.[1] | |

Before the Court is Petitioner Joe Clarence Smith's Motion for Relief from Judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure. (Doc. 78.) Smith, an Arizona death row inmate, asks the Court to "reopen his federal habeas proceedings" and "independently assess" his constitutional claims—that is, without the deferential standard of review mandated by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). (*Id.*) His request is based on the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which eliminated so-called *Chevron* deference as contrary to the Administrative Procedures Act [APA], 5 U.S.C. § 706. (*Id.*) Respondents oppose relief. (Doc. 79.) The motion is denied.

## **BACKGROUND**

In 1975, Smith murdered 18-year-old Sandy Spencer. *State v. Smith (Smith IV)*, 215 Ariz. 221, 225, 159 P.3d 531, 535 (2007). Her naked body was found on January 1, 1976,

---

[1] Ryan Thornell is substituted for his predecessor as Director of the Arizona Department of Corrections, Rehabilitation & Reentry. *See* Fed. R. Civ. P. 25(d).

in the desert northwest of Phoenix. *Id.* Less than a month later, Smith murdered 14-year-old Neva Lee. *Id.* Her naked body was found in the desert near the Salt River Indian Reservation. *Id.* Smith bound the victims, then asphyxiated them by stuffing their airways with dirt and taping their mouths shut. *Id.* Spencer also suffered nineteen stab wounds to the pubic region, a vaginal tear caused by penetration, and three stab wounds to her breasts; a sewing needle was embedded in her left breast. *Id.* Lee suffered wounds to her chest, abdomen, and breasts, and damage to her vulva. *Id.* At the time of these crimes, Smith was on probation for two prior first-degree rape convictions.[2]

Smith was indicted on two counts of first-degree murder. A jury convicted him of first-degree murder for the killing of Neva Lee. He pleaded guilty to first-degree murder for the killing of Sandy Spencer. The court sentenced Smith to death on both counts. The Arizona Supreme Court affirmed the convictions but remanded for resentencing in light of *State v. Watson*, 120 Ariz. 441, 445, 586 P.2d 1253, 1257 (1978), which held that Arizona's sentencing statute unconstitutionally limited a capital defendant's opportunity to present mitigation evidence. *State v. Smith (Smith I)*, 123 Ariz. 231, 243, 599 P.2d 187, 199 (1979).

At resentencing, the court again sentenced Smith to death for each murder. The sentences were affirmed on appeal. *State v. Smith (Smith II)*, 131 Ariz. 29, 35, 638 P.2d 696, 702 (1981).

From 1984 through 1991, Smith filed a series of unsuccessful petitions for postconviction relief ("PCR"). He then filed a habeas corpus petition, which this Court denied. *Smith v. Stewart*, 91-CV-1577 (D. Ariz. Jan. 21, 1997). The Ninth Circuit Court of Appeals reversed and remanded, holding that Smith's counsel had performed ineffectively at sentencing. *Smith v. Stewart (Smith III)*, 189 F.3d 1004, 1014 (9th Cir. 1999).

Following the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), which held that Arizona's capital sentencing scheme, in which judges made the findings

---

[2] In February 1975, Smith raped and sodomized a pregnant woman to whom he had offered a ride. *State v. Smith*, 116 Ariz. 387, 389, 569 P.2d 817, 819 (1977). In July 1975, Smith and a companion kidnapped, raped, and stabbed a 15-year-old girl. *See State v. Smith*, 123 Ariz. 243, 246, 599 P.2d 199, 202 (1979).

rendering a defendant death-eligible, was unconstitutional, Smith's next resentencing took place before a jury, in April 2004. *Smith IV*, 215 Ariz. at 222, 159 P.3d at 536. The jury resentenced Smith to death for each murder. *Id.*

The Arizona Supreme Court affirmed. *Smith IV*, 215 Ariz. 221, 159 P.3d 531. After unsuccessfully pursuing post-conviction relief, Smith returned to this Court seeking habeas relief. Applying the provisions of the AEDPA, the Court denied Smith's petition in March of 2014. The Ninth Circuit affirmed, *Smith v. Ryan (Smith VI)*, 823 F.3d 1270 (9th Cir. 2016), and the Supreme Court denied Smith's petition for writ of certiorari, *Smith v. Ryan*, 581 U.S. 954 (2017).

## **DISCUSSION**

**1.** *Loper Bright*

The Supreme Court granted certiorari in *Loper Bright* "limited to the question whether *Chevron* should be overruled or clarified."[3] 603 U.S. at 384. In *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), the Court addressed the proper standard of review of a federal agency's interpretation of the statutes it administers. The Court established a two-step process. The second step comes into play "if the statute is silent or ambiguous with respect to the specific issue." *Id.* at 843. In that event, the reviewing court must defer to the agency's interpretation if it "is based on a permissible construction of the statute." *Id.*

In *Loper Bright*, the Court eliminated *Chevron* deference, holding instead that federal courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, *as the APA requires*." 603 U.S. at 412 (emphasis added). The Court concluded, therefore, that "courts need not and under the APA may not

---

[3] In *Loper Bright*, the district court, applying *Chevron* deference, granted summary judgment to the Government, whose interpretation of the relevant statutes required plaintiffs, "family businesses that operate in the Atlantic herring fishery," to pay for observers required by the National Marine Fisheries Services. 603 U.S. at 382. The D.C. Circuit affirmed. *Id.*

defer to an agency interpretation of the law simply because a statute is ambiguous." 603 U.S. at 412, 413.

This holding was based on the statutory language of the APA. As the Court explained:

> [T]he APA delineates the basic contours of judicial review of [agency] action. As relevant here, Section 706 directs that "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. It further requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." § 706(2)(A).

> The APA thus codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment. It specifies that courts, not agencies, will decide "*all* relevant questions of law" arising on review of agency action, § 706 (emphasis added)—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it.

*Id.* at 391–92.

*Chevron* deference to agency decision-making thus "defies" the provisions of the APA. *Id.* at 398; *see id.* at 411 ("*Chevron* was a judicial invention that required judges to disregard their *statutory duties*.") (emphasis added); *id*. at 413 (Thomas, J., concurring) ("As the Court explains, [*Chevron*] deference does not comport with the Administrative Procedure Act, which requires judges to decide 'all relevant questions of law' and 'interpret constitutional and statutory provisions' when reviewing an agency action. 5 U.S.C. § 706.").

The Court further noted that § 706 "prescribed no deferential standards for courts to employ in answering those legal questions." *Id.* at 392. This omission was "telling, because Section 706 does mandate that judicial review of agency policymaking and factfinding be deferential." *Id.* (citing § 706(2)(A); § 706(2)(E)).

1    **2.      Rule 60(b)(6)**[4]

2           Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from

3    judgment on several grounds, including "any . . . reason justifying relief from the operation

4    of the judgment." Fed.R.Civ.P. 60(b)(6). A motion under subsection (b)(6) requires a

5    showing of "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

6    The Supreme Court has cautioned that "[s]uch circumstances will rarely occur in the habeas

7    context," *id.*, and the Ninth Circuit has emphasized that "Rule 60(b)(6) can and should be

8    'used sparingly as an equitable remedy to prevent manifest injustice.'" *Hall v. Haws*, 861

9    F.3d 977, 987 (9th Cir. 2017) (quoting *United States v. Alpine Land & Reservoir Co.*, 984

10   F.2d 1047, 1049 (9th Cir. 1993)). Smith contends that the *Loper Bright* decision is an

11   intervening change in law that constitutes an extraordinary circumstance. (Doc. 78 at 8–

12   12.)

13          When a petitioner seeks post-judgment relief based on an intervening change in the

14   law, the Ninth Circuit has directed district courts to balance several factors. *Phelps v.*

15   *Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009); *see also Lopez v. Ryan*, 678 F.3d 1131,

16   1135–37 (9th Cir. 2012). These factors include whether "the intervening change in the law

17   . . . overruled an otherwise settled legal precedent"; whether the petitioner was diligent in

18   pursuing the issue; whether "the final judgment being challenged has caused one or more

19   of the parties to change his position in reliance on that judgment"; whether there is "delay

20   between the finality of the judgment and the motion for Rule 60(b)(6) relief"; whether there

21   is a "close connection" between the original and intervening decisions at issue in the Rule

22   60(b) motion; and whether relief from judgment would upset the "delicate principles of

23   comity governing the interaction between coordinate sovereign judicial systems." *Phelps*,

24   569 F.3d at 1135–40; *see Cox v. Horn*, 757 F.3d 113, 125 (3rd Cir. 2014) ("Principles of

25   finality and comity, as expressed through AEDPA and habeas jurisprudence, dictate that

26   federal courts pay ample respect to states' criminal judgments and weigh against disturbing

27

28   ———————————
     [4] The Court agrees that Smith's motion is not a second or successive petition. *See Gonzalez
     v. Crosby*, 545 U.S. 524, 532 (2005).

those judgments via 60(b) motions. . . .  Considerations of repose and finality become stronger the longer a decision has been settled." (citing *Gonzalez*, 545 U.S. at 537–37).

These factors do not favor reopening the case. Because, as explained next, there is no connection, let alone a close one, between *Loper Bright* and the denial of Smith's habeas petition more than a decade ago, the Court will not grant relief.

**3.     Analysis**

Under the AEDPA, federal habeas relief is available only if the state court's decision denying a claim on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law."[5] 28 U.S.C. § 2254(d)(1). Clearly established federal law refers to the holdings of the Supreme Court at the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Smith argues that under the rationale of *Loper Bright*, this deference to state court decisions required by § 2254(d)(1) violates the Supremacy Clause, the separation of powers, and Article III of the Constitution. (Doc. 78 at 2–3.) Smith's arguments mischaracterize both *Loper Bright* and the AEDPA.

First, as already noted, the holding in *Loper Bright* was based on the language of the APA, which requires courts to decide "all relevant questions of law" and to "interpret constitutional and statutory provisions," 5 U.S.C. § 706, and which contains no call for deference to be paid to agency decisions. 603 U.S. at 391–92, 398; *see id.* at 413 (Thomas, J., concurring). "The deference that *Chevron* requires of courts reviewing agency action *cannot be squared with the APA*." *Id.* at 397 (emphasis added); *see id.* at 415 (Thomas, J.,

---

[5] As explained in *Williams*, a state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a Supreme Court decision but reaches a different result. 529 U.S. at 405–06. A state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407

concurring). As Justice Thomas's concurrence makes plain, *Loper Bright* addressed only the contradiction (in the majority's view) between *Chevron* deference and the terms of the APA. *Id.* at 413 ("I write separately to underscore a more fundamental problem: *Chevron* deference also violates our Constitution's separation of powers. . . .") (Thomas, J., concurring). *Loper Bright* did not hold that all statutory limits on federal judicial review, including the AEDPA, violate Article III or the separation of powers.

Next, Smith contends that the AEDPA requires "total deference to state court rulings on federal questions." (Doc. 78 at 5.) This is not the case. The Court in *Williams* acknowledged that "§ 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."[6] 529 U.S. at 412. The Court has also explained, however, that "§ 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)); *see Rice v. White*, 660 F.3d 242, 251 (6th Cir. 2011) ("Federal courts retain statutory and constitutional authority . . . to remedy detentions by state authorities that violate federal law, so long as the procedural demands of AEDPA are satisfied."); *Mitchell v. Maclaren*, No. 15-CV-10356, 2017 WL 4819104, at *18 (E.D. Mich. Oct. 25, 2017), *aff'd*, 933 F.3d 526 (6th Cir. 2019) ("Although the standard is difficult to meet, it is not impossible and therefore does not amount to a suspension of the writ.") (citing *Crater v. Galaza*, 491 F.3d 1119, 1125 (9th Cir. 2007)); *Demirdjian v. Gipson*, 832 F.3d 1060, 1077 (9th Cir. 2016) (Noonan, J., dissenting) ("'Difficult' is the term chosen by the Supreme Court to characterize the process of a federal court reviewing a state criminal conviction

---

[6] Notwithstanding these new restraints, the Court in *Williams* granted habeas relief, finding that the state supreme court's denial of the petitioner's ineffective assistance of counsel claim was contrary to and an unreasonable application of clearly established federal law. 529 U.S. at 399, 413–16.

under AEDPA. 'Difficult' is not the same as 'impossible.' The Supreme Court has not cut off our review of state criminal convictions. Nor has Congress eliminated our review.") The difficult standard imposed by § 2254(d)(1) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).

Despite its deferential, difficult-to-meet standard of review, the AEDPA has survived every challenge raised against it. *See Ulrey v. Zavaras*, 483 Fed.Appx 536, 543 n.4 (10th Cir. 2012) ("The statute is applied daily by federal courts across the country; it is routinely applied by the Supreme Court; and no court has yet held it unconstitutional. . . ."); *Cobb v. Thaler*, 682 F.3d 364, 374 (5th Cir. 2012) ("§2254(d)(1) does not intrude on the independent adjudicative authority of the federal courts," but "limits the grounds on which federal courts may grant the habeas remedy to upset a state conviction"); *Evans v. Thompson*, 518 F.3d 1, 11 (1st Cir. 2008) ("[W]hile AEDPA does restrict a remedy, it does not interfere with Article III powers, nor does it prescribe a rule of decision."); *Crater*, 491 F.3d at 1125 (finding § 2254(d)(1)'s restriction of habeas relief to state court decisions that are contrary to or an unreasonable application of clearly established federal law is not an unconstitutional suspension of the writ, because it modifies preconditions for relief rather than foreclosing all jurisdiction to review claims); *Allen v. Ornoski*, 435 F.3d 945, 960–61 & n.11 (9th Cir. 2006) (noting § 2254(d)(1)'s restriction "merely limits the source of clearly established law that the Article III court may consider" and does not impermissibly alter content of that law in violation of Article III or separation of power principles); *Duhaime v. Ducharme*, 200 F.3d 597, 601 (9th Cir. 2000) ("Section 2254(d) merely limits the source of clearly established law that the Article III court may consider, and that limitation served to govern prospectively classes of habeas cases rather than offend the court's authority to interpret the governing law and to determine the outcome in any pending case.").

Smith asserts that "Congress cannot tell federal courts what to do." (Doc. 82 at 3.) In *Felker v. Turpin*, the Supreme Court upheld the AEDPA against arguments that it violated Article III and the Suspension Clause. 518 U.S. 651. The Court reiterated that "judgments about the proper scope of the writ are 'normally for Congress to make.'" *Id.* at 664 (quoting *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996)); *see Evans*, 518 F.3d at 12 ("[L]imitations on the availability of federal habeas relief for state court convictions are nothing new. Before AEDPA, the scope of the writ was already subject to 'a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions.'") (quoting *Felker*, 518 U.S. at 664).

In support of his argument that the reasoning in *Loper Bright* establishes AEDPA's unconstitutionality, Smith cites Justice Thomas's concurring opinion. (Doc. 78 at 10; *see* Doc. 82 at 2.) ("Because the judicial power requires judges to exercise their independent judgment, the deference that *Chevron* requires contravenes Article III's mandate." *Loper Bright*, 603 U.S. at 415 (Thomas, J., concurring)). Two years earlier, however, in *Shinn v. Ramirez*, 596 U.S. 366 (2022), Justice Thomas applied provisions of the AEDPA to deny relief to two Arizona death row inmates. In doing so, Thomas described the costs to the states of federal intervention through habeas review, noted that "federal habeas review cannot serve as a substitute for ordinary error correction through appeal," and explained that "[t]o ensure that federal habeas corpus retains its narrow role, AEDPA imposes several limits on habeas relief, and we have prescribed several more." *Id.* at 377 (citing *Brown v. Davenport*, 596 U.S. 118, 132–33 (2022)). He also emphasized that the Court had no power to amend, or not to enforce, the AEDPA. *Id.* at 385. "Where Congress has erected a constitutionally valid barrier to habeas relief, a court *cannot* decline to give it effect." *Id.* (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 402 (2013) (Scalia, J., dissenting)). Even Justice Thomas, whose concurrence in *Loper Bright* highlighted his view that *Chevron* deference was an unconstitutional usurpation of judicial power, identified no such problems in the AEDPA. Contrary to Smith's position, then, statutory and judicially-

- 9 -

imposed limitations on habeas relief, such as those set out in AEDPA, do not represent violations of Article III or the separation of powers doctrine.

Finally, Smith's argument that in eliminating *Chevron* deference *Loper Bright* also invalidated the AEDPA depends on the legitimacy of the analogy he draws between federal agencies and state courts. (*See* Doc. 78 at 4, 5; Doc. 82 at 3.) The analogy is flawed. The Supreme Court has explained that the "AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). "'[T]he States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, [the Supreme Court has] consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.'" *Id.* (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)). "Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.* at 15–16. Accordingly, a state court's decision on a constitutional claim—an issue which it is presumptively competent to handle—bears little resemblance to a federal agency's interpretation of a statute, and a federal court's deference to the former under the AEDPA bears no resemblance to the *Chevron* deference rejected in *Loper Bright*.

The Court has no basis on which to decree the AEDPA unconstitutional or find that *Loper Bright* silently overruled cases like *Williams* which have interpreted and applied § 2254(d)(1).[7] The Supreme Court has admonished lower courts not to interpret a Supreme Court opinion as implicitly overturning its prior precedent. *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (explaining that when Supreme Court precedent has "direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [courts] should follow the line of cases which directly controls, leaving to [the Supreme] Court the

---

[7] According to Smith, the "Supreme Court has applied AEDPA deference in over 70 opinions." (Doc. 78 at 8.)

- 10 -

prerogative of overturning its own decisions."); *see California Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045, 1057 (9th Cir. 2023) ("We do not assume that the Court has overruled its older precedents 'by implication.' And we do not easily assume that the Court has abrogated our circuit precedents unless the decisions are 'clearly irreconcilable,' particularly where the Supreme Court decisions we relied on remain on the books.") (citations omitted). Any "doctrinal inconsistency" between *Loper Bright* and Supreme Court cases applying the AEDPA "is not for this Court to remedy." *United States v. Alderman*, 565 F.3d 641, 648 (9th Cir. 2009) (quoting *United States v. Patton*, 451 F.3d 615, 636 (10th Cir. 2006)).

### CONCLUSION

*Loper Bright* is an intervening change in law, but not one that implicates Smith's habeas proceedings. It cannot form the basis for relief under Rule 60(b)(6).

Accordingly.

**IT IS HEREBY ORDERED denying** Smith's Motion for Relief from Judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure. (Doc. 78.)

**IT IS FURTHER ORDERED denying** a certificate of appealability.

Dated this 20th day of February, 2025.

Honorable Roslyn O. Silver
Senior United States District Judge

- 11 -